IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTINA MCDONALD and GIOVANNI CHIAZZESE, <br>                 Plaintiffs, <br><br> v. <br><br> LOWE'S COMPANIES, INC., <br>                 Defendant. | Civil Action No. 08-cv-219 |

**OPINION**

September 24, 2009                                                                                                  Pollak, J.

      In this diversity case, plaintiff Christina McDonald has brought suit against defendant Lowe's Companies, Inc., claiming that Lowe's negligence resulted in an injury she sustained while working in a Lowe's store as an independent contractor. Her husband, Giovanni Chiazzese, is suing for loss of consortium. Now before the court is Lowe's motion for summary judgment (docket no. 21). For the reasons that follow, defendant's motion will be granted.

**I.  BACKGROUND**

**A.  Factual Background**

      This lawsuit arises out of a workplace incident at a Lowe's retail store in Philadelphia. On April 18, 2007, plaintiff Christina McDonald was injured while working as a merchandiser at a store where she provided services to the Rough Plumbing and Electrical Departments. During

1.

the period at issue here, plaintiff[1] was an employee of DDP Holdings, Inc. ("DDP").  DDP had a contract with Lowe's wherein DDP provided merchandising services as an "in store service group" ("ISSG").[2]

The Services Agreement ("SA") between Lowe's and DDP stated that ISSG personnel were not considered employees of Lowe's.  SA at 1, 6.  The agreement further stated that the ISSG had all authority to hire, fire, supervise, and control its employees and was responsible for all acts of its employees.  *Id.* at 6-7.  Plaintiff stated that she was hired to work independently and did not have to take direction from Lowe's employees.  Deposition of Christina McDonald ("Pl. Dep.") at 38.

While plaintiff was working at Lowe's on April 18, she injured her shin when she attempted to move a metal grate in order to rearrange the shelving in an aisle of the store.  When plaintiff was pulling the grate toward her, it slid forward and fell into her left leg.  *Id.* at 82-83.

According to plaintiff's job description, the merchandising services she provided at Lowe's included "maintain[ing] Plan-O-Gram integrity."  Merchandiser Job Description ("Job Desc.").  A Plan-O-Gram is a blueprint of how the shelving for a specific aisle in the Lowe's store is to be arranged, such as the height level of each shelf.  *See* Sample Plan-O-Gram ("Plan").  The metal shelving grate involved in plaintiff's injury was approximately 4' x 4' and weighed between 40 and 50 pounds.  Photograph and Description of Steel Grate ("Grate Photo").

---

[1] As noted, Giovanni Chiazzese, McDonald's husband, is also a plaintiff in this suit.  Because his claim is derivative of McDonald's claims, see Part II(D) *infra*, I will use the term "plaintiff" to refer to McDonald until Chiazzese's claim is examined at the end of this memorandum.

[2] The services agreement between Lowe's and DDP states that, as an ISSG, DDP will perform routine in-store product services.

Although plaintiff's job required her to "frequently lift and/or move up to 50 lbs. of merchandise usually up to 8 - 10 feet," she notes that moving steel shelving grates was not listed explicitly in her job description.  *See* Job Desc; Pl. Dep. at 29.  Plaintiff was never trained in how to handle steel shelving, including how to move a grate from one location to another.  Pl. Dep. at 29.  She understood that she was not required to move steel grates, including the type of grates involved in her accident.  *Id.*  Additionally, plaintiff was never told that she could not move steel grates.  *Id.* at 30.  Although steel grates were not mentioned in plaintiff's job description or in the training she received, part of plaintiff's job was to look at the Plan-O-Gram and make sure that all the elements depicted were positioned correctly.  *Id.* at 35.

Before the incident, plaintiff was told by her supervisor Howard Flatko, of DDP, and asked by Lowe's managers, Dave Myers and Dan Kocsis, to reset products in a particular bay according to a Plan-O-Gram.  *Id.* at 51.  Plaintiff stated that the need to reset the Plan-O-Gram arose because James Blair, the Lowe's store manager, decided to alter a four-bay Plan-O-Gram and make it into a two-bay Plan-O-Gram.[3]  *Id.* at 46-47.  During a walk through of the store, DDP supervisor Flatko told plaintiff to reset the altered Plan-O-Gram in time for a Lowe's corporate inspection which was to occur in three weeks.  *Id.* at 68-69.  Flatko did not specifically ask plaintiff to move the grates, but was aware that plaintiff would have to move the grates to

---

[3] Plaintiff's deposition indicates that supervisor Kocsis of Lowe's asked plaintiff to make the four-bay Plan-O-Gram look like a two-bay Plan-O-Gram to implement a decision made by Blair.  *Id.* at 53.  In Lowe's answer to plaintiff's complaint, Lowe's denies that a manager at Lowe's altered the Plan-O-Gram and says "strict proof" of that allegation will be demanded at trial.  Defendant has adduced no record evidence contrary to plaintiff's statement.

complete the other tasks he assigned her to prepare for the inspection.[4] *Id.* at 68-69.

Similarly, Lowe's Zone Manager Dan Kocsis did not specifically tell plaintiff to move the shelves, but asked her, "Can you fix this?" *Id.* at 53:15. Plaintiff understood Kocsis's question to be asking plaintiff to move some of the shelving grates in order to fix the arrangements of products in the Plan-O-Gram. *Id.* at 53-54. Certain products were lying flat, and the Plan-O-Gram required that they be stood upright. *Id.* at 53-54. In order to stand the products upright as required, plaintiff had to raise several metal grates. *Id.*

During the three days prior to the incident, plaintiff reset the height of a few of the grates with the help of Lowe's employee Bill Myers. *Id.* at 55-56, 59. On the day of the incident, plaintiff again asked Myers for help and he agreed to help her. *Id.* at 66. Myers was not required to help plaintiff, but did so as a favor to her. *Id.* at 55, 64. However, Myers was frequently called away to do other work. *Id.* at 76. After waiting for half an hour for Myers to return, plaintiff started to move the grate herself. *Id.* at 67, 70, 81. At the time plaintiff decided to move the grate herself, she did not believe she had the option of waiting for Myers to return in order to help her. *Id.* at 72. Rather, she thought she might lose her job if she continued to wait. *Id.* at 80.

Plaintiff did not think it was unsafe for her to move the grate herself based on her prior experience with moving grates. *Id.* at 73. On previous occasions, plaintiff was able to lift grates herself when they were on floor level in order to clean the area around the grates. *Id.* at 60. At the time of the accident, the grate was about three feet off the ground when plaintiff decided to

---

[4] During her deposition, plaintiff said, "[Flatko] didn't say literally that Chris, you're going to have to move these shelves. He said this is a mess. He never told me I was going to have to move steel." *Id.* at 68:17-20. Viewing the record in the light most favorable to the plaintiff, it appears that Flatko ordered McDonald to move the shelves herself or to see to it that they were moved.

adjust its height.  *Id.* at 65-66.  She started to slide it down from the beams it was resting on, and when she did, the grate became off balance and fell out of her hands and into her leg.  *Id.* at 74.

In the wake of her injuries, McDonald received benefits from DDP pursuant to the Pennsylvania Workers' Compensation Act.  *Id.* at 92-97.  She then brought this action against Lowe's.

**B. Procedural Background**

McDonald is suing Lowe's for negligence.  In her complaint, plaintiff suggests that Lowe's owed her a duty as an independent contractor and as a business invitee.  Lowe's moves for summary judgment on the ground that parties that hire independent contractors are exempt from liability for injuries sustained by the employees of such contractors.  In the alternative, defendant contends that all claims against Lowe's must be dismissed because Lowe's is a "statutory employer" of plaintiff.  Plaintiff responds to defendant's motion by stating that plaintiff qualified as a "casual employee" of Lowe's for the purposes of the incident, which exposes Lowe's to a common law tort claim for negligence.

## II.  DISCUSSION

**A. Standard of Review**

A court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A genuine issue of material fact exists where the jury could reasonably find for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute over facts is material where it could affect the outcome of the case.  *Belitskus*

*v. Pizzingrilli*, 343 F.3d 632, 639 (3d Cir. 2003). "In considering the evidence, the court should draw all reasonable inferences against the moving party." *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007).

**B. Plaintiff McDonald's Negligence Claims**

In this diversity action, McDonald's negligence claims are governed by Pennsylvania law. In Pennsylvania, a claim for negligence requires four elements: (1) a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks; (2) a failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting in harm to the interests of another. *Northwest Mutual Life Ins. Co. v. Babayan*, 430 F.3d 121, 139 (3d Cir. 2005) (applying Pennsylvania law).

    1.  <u>Plaintiff's Claim that a Duty is Owed to Her as an Independent Contractor</u>

        a. Independent Contractor Analysis

An employee is an independent contractor when he or she is not subject to the alleged employer's control or right to control his or her physical conduct in the performance of services for which that person is employed. *See Cox v. Caeti*, 279 A.2d 756, 758 (Pa. 1971). Since the facts of McDonald's employment status are undisputed,[5] this court determines that plaintiff served as an independent contractor to Lowe's. *See Joseph v. United Workers Assoc.*, 23 A.2d 470, 472 (Pa. 1942) (finding that independent contractor status is a question of fact for the jury,

---

[5] Plaintiff understood that she was hired to work independently and did not have to comply with instructions of Lowe's employees. Pl. Dep. at 38, 64. Furthermore, it is stated in the Services Agreement that DDP has full authority to direct and control the work of its employees. SA at 6.

except in the case where the facts are not in dispute).

Whether a defendant owes a duty to a plaintiff is a question of law. *Farabaugh v. Pa. Turnpike Comm'n*, 911 A.2d 1264, 1272-73 (Pa. 2006). Generally, a hiring party owes no duty to employees of independent contractors, and is not subject to liability for injuries sustained by those employees. *Hader v. Coplay Cement Co.*, 189 A.2d 271, 277 (Pa. 1963); *Warnick v. The Home Depot U.S.A., Inc.*, 516 F. Supp. 2d 459, 467 (E.D. Pa. 2007) (applying Pennsylvania law). Two exceptions to this rule are (1) if the hiring party retains control over the means and methods of the independent contractor's work, and (2) if the work performed poses a "special danger" or is particularly risky. *Lorah v. Luppold Roofing Co., Inc.*, 622 A.2d 1383, 1384 (Pa. Super. Ct. 1993).

i. "Right of Control" Exception

First, the "right of control" exception subjects an employer of an independent contractor to liability when the employer "entrusts work to an independent contractor, but . . . retains the control of any part of the work . . . [and] fail[s] to exercise his control with reasonable care." *LaChance v. Michael Baker Corp.*, 869 A.2d 1054, 1058 (Pa. Commw. Ct. 2005) (adopting RESTATEMENT (SECOND) OF TORTS § 414). The retained control exception applies when an employer retains "at least some degree of control over the manner in which the work is done." *See* REST. § 414. Pennsylvania cases tend to construe the right of control exception narrowly, often finding that the hiring party did not retain enough control over the contractor's work to impose liability. *See Warnick*, 516 F. Supp. 2d at 468 (citing examples of narrow construction of the exception in Pennsylvania).

A general right of the employer of the independent contractor to inspect progress, make

7.

recommendations, or prescribe alterations is not enough to bring the exception into play. *See LaChance*, 869 A.2d at 1059 (discussing comments to REST. § 414 and finding that the independent contractor retained sufficient control over the work of his employees such that liability could not be imposed on the employer); *see also Hader*, 189 A.2d at 279 (denying plaintiff's right of control claim where the employer hired a technical advisor to oversee the equipment that plaintiff was contracted to install); *cf. Byrd v. Merwin*, 317 A.2d 280 (Pa. 1974) (finding landowner employer exercised sufficient control when landowner, not the general contractor, hired and fired subcontractors and told subcontractors where and how to work); *Bullman v. Giuntoli*, 761 A.2d 566 (Pa. Super. Ct. 2000) (finding that a genuine issue of material fact existed where homeowner and building contractor took a very active role in the construction process, including visiting the site everyday and reserving certain projects to be completed himself).

In *LaChance*, the Commonwealth Court looked to the language of the contract between defendant, Pennsylvania Department of Transportation ("PennDOT"), and plaintiff's employer, an independent contractor of PennDOT, which expressly provided that control over the means of the contractor's work belonged to the contractor, not to PennDOT. *See LaChance*, 869 A.2d at 1060 (citing the relevant contract provisions). The court found that PennDOT's inspection rights did not qualify as retained control for the purposes of the exception. *Id.* at 1060-61.

The right of control exception does not apply in this case. Defendant argues that, like the employer in *LaChance,* Lowe's did not control the means and manner of plaintiff's work. Defendant notes plaintiff's statement that she was asked by managers at DDP and Lowe's to

8.

rearrange the shelving that caused her injury. Brief for Def. at 9 (citing Pl. Dep. at 50-51).[6]

Additionally, defendant cites plaintiff's admissions that she did not have to comply with requests made by managers at Lowe's, and that no one at Lowe's directly supervised her work. Pl. Dep. at 38, 41-42. Therefore, defendant argues, plaintiff failed to establish that Lowe's controlled any "operative details of her work." Brief for Def. at 11. Like the contract language in *LaChance*, the contract between Lowe's and DDP shows a clear intent that DDP was to retain control over the means and manner of plaintiff's work. *See* SA at 6-7. As the record in no way demonstrates a question of material fact on the issue, I conclude that the right of control exception does not apply.

ii. "Special Danger" Exception

Defendant argues that the "special danger" or "peculiar risk" exception does not create liability in this case. *See* Brief for Def. at 11-13. Without any explanation, plaintiff agrees. *See* Pl. Resp. at 2 ("The peculiar risk exception does not apply."). Accordingly, this exception cannot apply to this lawsuit.

2. Plaintiff's Claim that a Duty is Owed to Her as a Business Invitee

Plaintiff claims, in her complaint, that Lowe's owed her a duty because Lowe's created a reasonably foreseeable dangerous condition when one of its managers altered a Plan-O-Gram that plaintiff was subsequently instructed to rearrange. *See* Pl. Compl. at No. 7 (stating that she was a business invitee of defendant); Pl. Dep. at 51 (stating that a Lowe's manager altered the Plan-O-Gram from a two-bay to a four-bay arrangement).

---

[6] As the defendant included no page numbers in its motion, the page numbers supplied here were determined by the court.

In Pennsylvania, employees of independent contractors working on, or in control of, premises owned by another are considered business invitees. *LeFlar v. Gulf Creek Indus. Park No. 2*, 515 A.2d 875, 880 (Pa. 1986). The possessor of land owes a duty of reasonable care to make its premises safe for the employee of an independent contractor as a business invitee and to provide adequate warning to the employee "of any dangers known to the possessor of the land or which should by exercise of reasonable care be known to the possessor of the land and risks that are unknown to the employee." *Id.*

Specifically, a possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he (a) knows or by the exercise of reasonable care would discover the condition and should realize that it involves an unreasonable risk of harm to such invitees, (b) should expect that the invitees will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger. *See Carrender v. Fitterer*, 469 A.2d 120, 123 (Pa. 1983) (adopting REST. § 343). Additionally, "a possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." *Id.* (quoting REST. § 343A).

A danger is deemed to be "obvious" when "both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising normal perception, intelligence, and judgment." *Id.* at 124 (quoting REST. § 343A, comment b). A "known" danger must be known to exist, known to be dangerous, and "the probability and gravity of the threatened harm must be appreciated." *Id.* Finally, "[a]lthough the question of

10.

whether a danger was known or obvious is usually a question of fact for the jury, the question may be decided by the court where reasonable minds could not differ as to the conclusion." *Id.* (citing REST. § 328B, comments c and d); *see also Kabo v. UAL, Inc.*, 762 F. Supp. 1190, 1195 (E.D. Pa. 1991) (holding the risk of heart attack to 65-yr-old from lifting heavy luggage to be known and obvious as a matter of law).

Additionally, a landowner owes no duty to a contractor if the contractor is in the same position as the landowner to discover the dangerous condition. *Warnick*, 516 F. Supp. 2d at 466 (citing *Colloi v. Phila. Elec. Co.*, 481 A.2d 616, 620 (Pa. Super. Ct. 1984)). In *Warnick*, the court declined to find a duty owed to plaintiff as a business invitee since the condition that caused plaintiff's injury, an unsecured board on the ceiling, was at least as obvious to plaintiff as it was to defendant's employees. *Id.*

The record here does not present an issue of fact that merits jury consideration. Plaintiff claims that defendant should be liable because a store manager at Lowe's altered the Plan-O-Gram from a two-bay to a four-bay Plan-O-Gram, creating a reasonably foreseeable dangerous condition about which Lowe's failed to warn plaintiff. Pl. Comp. Defendant contests the fact that a store manager at Lowe's altered the Plan-O-Gram. Def. Answer. While the court recognizes this as a factual dispute, the issue is not material to the question of whether Lowe's owed plaintiff a duty to remedy or warn plaintiff of the condition. In *Warnick*, plaintiff and defendant disagreed as to who placed the board on the ceiling that caused plaintiff's injury. 516 F. Supp. 2d at 466. "Whether the board placed on the ceiling high above the ground was placed by Home Depot or [another party], this dangerous condition of land was at least as obvious to [plaintiff] and [plaintiff's employer] as it was to Home Depot." *Id.* at 466-67. I find that a

similar situation exists here.  Whether it was DDP or Lowe's staffers who altered the Plan-O-Gram and created the need to reset shelves, there is no dispute in the record that lifting a heavy metal grate presented a risk about which defendant was no more aware than plaintiff.

*Kabo* further supports this conclusion.  In *Kabo*, plaintiff, the president of a travel agency for senior citizens, suffered a heart attack when he assisted customer service representatives of defendant, an airline, with checking in his elderly clients' luggage.  *Kabo*, 762 F. Supp. at 1191.  This court stated that, although no Pennsylvania cases were directly on point,"any reasonable person in plaintiff's position, i.e. a 65-year-old man exercising normal perception, intelligence and judgment, would conclude that repeated lifting of heavy baggage over a period of 15-30 minutes could present serious health risks, including a heart attack." *Id.* at 1195.  Thus, the court reasoned, the dangers associated with lifting luggage were obvious to a reasonable man.  *Id.*  Here, the record establishes that McDonald was aware of the dangers associated with lifting heavy objects.  She had asked for help when she had to move the steel shelves in the past.  Pl. Dep. at 55-56, 59.  She had been able to move a few of the grates herself when they were at floor level.  *Id.* at 60.  Thus, although she did not think it was unsafe for her to move the grate herself, *id.* at 71, she was obviously aware of the risks associated with lifting these heavy objects.

Applying the guidance of *Colloi*, the issue of defendant's liability under a business invitee theory should only be submitted to a jury if some evidence exists that (1) the risks of moving the shelving were obvious to Lowe's; (2) the risks were non-obvious and unknown to plaintiff at the time of her injury; and (3) Lowe's failed to warn her about those risks.  481 A.2d at 621-22.  There is no viable evidence as to factor number two in this record.  As in *Warnick*, the risk of moving the shelving was as at least as obvious to plaintiff as to defendant.  516 F. Supp. 2d at

466.  Accordingly, in these circumstances, plaintiff was not owed a duty.

### 3.  Plaintiff's Claim that a Duty is Owed to Her as a Casual Employee

Finally, in her response to the motion for summary judgment, McDonald presents an additional theory of liability:  that at the time of the accident she qualified as a "casual employee" of Lowe's and was thus owed a duty.  Pl. Resp. at 3.  The casual employee doctrine usually applies in the context of workers' compensation claims.  *See Martin v. Recker*, 552 A.2d 668, 672-73 (Pa. Super. Ct. 1988) ("The exclusion from [Workers' Compensation Act] coverage of persons whose work is casual and not in the regular course of the business of the employer is intended to distinguish the primary income-producing activity of an employer from other operations which, while perhaps necessary, are clearly incidental to the main function of the business enterprise.") (internal citation and quotation omitted).  However, casual employment can create liability under common-law tort principles.  *Ashman v. Sharon Steel Corp.*, 448 A.2d 1054, 1060 (Pa. Super. Ct. 1982) ("Casual employment . . . does not place the kind of 'control' in an employer that brings with it the responsibility contemplated by the Workmen's Compensation Act.  It does, however, leave the employer open to liability under traditional tort principles.").

The determination of whether a plaintiff is a casual employee, as opposed to an employee covered by workers' compensation, is a question of law for the court.  *Callihan v. Montgomery*, 115 A. 889, 891 (Pa. 1922); *Barnett v. Bowser*, 106 A.2d 457, 458 (Pa. Super. Ct. 1954).  Pennsylvania decisions suggest that the proper inquiry, when determining whether a person should be deemed a casual worker, focuses on two areas: (1) whether the duties performed by that person occur with some frequency and advance planning or are of a purely temporary and unexpected nature; and (2) whether the work constitutes a part of the employer's regular course

of business. *Brookhaven Baptist Church v. W.C.A.B.*, 912 A.2d 770, 777 (Pa. 2006).[7] *See also Cochrane v. William Penn Hotel*, 16 A.2d 43, 44-45 (Pa. 1940); *Carpenters' Joint Appr'ship Comm. v. W.C.A.B.*, 654 A.2d 656, 559-60 (Pa. Commw. Ct. 1995).

The bulk of relevant cases examine fairly straightforward circumstances where an injured person is bringing suit against the person or entity that directly engaged the injured person to do some kind of work. In these cases, Pennsylvania courts undertake the two-element analysis to determine whether the employer is immune from the Workers' Compensation Act as to the injured plaintiff. *See Cochrane*, 16 A.2d at 44 (determining whether a carpenter, hired by a hotel to remodel the lobby, was an employee or a casual employee of the hotel); *Dews v. Shmukler*, 185 A.2d 607, 609 (Pa. Super. Ct. 1962) (deciding whether a youth, regularly hired as a day laborer by a fruit vending business, was an employee or a casual employee).

One opinion, *Ashman v. Sharon Steel Corp.* 448 A.2d 1054 (Pa. Super Ct. 1982), squarely addresses the more complex circumstances where a plaintiff, who is the employee of an independent contractor, sues the business that contracted with the independent contractor under the theory that the business owed plaintiff a common-law duty as a casual employee. A

---

[7] Pennsylvania courts derive this examination from the Pennsylvania Workers' Compensation Act, which states that the "term 'employe' as used in this act is declared to be synonymous with servant, and includes – All natural persons who perform services for another for a valuable consideration, exclusive of persons whose employment is casual in character and not in the regular course of the business of the employer . . . ." 77 PA. STAT. § 22.

The Pennsylvania Supreme Court has not resolved definitively whether application of the casual employment doctrine (or exclusion of an injured person from workers' compensation coverage) requires a showing that the work was both casual in nature and outside the regular course of business for the defendant or merely that the work was either casual or outside the regular course. *Brookhaven Baptist*, 912 A.2d at 778. Because the Pennsylvania Supreme Court in *Brookhaven Baptist*, the most recent case addressing this doctrine, examined both elements separately, I will undertake to do the same.

description of the case may clarify the difference. In *Ashman*, the plaintiff worked as a driver for a trucking company that both leased property from, and conducted trucking jobs for, the defendant business. 448 A.2d at 1056. Plaintiff was scheduled to receive a load of product from defendant for a delivery. *Id*. When defendant's crane malfunctioned, one of defendant's workers directed plaintiff to help him repair it. *Id*. Having been reprimanded by his actual employer for failing to assist defendant's employees on such incidental matters in the past, plaintiff helped with defendant's crane repair and was injured. *Id*. The Superior Court found that the defendant could be held liable for common-law negligence, regardless of plaintiff's status as the employee of an independent contractor, because plaintiff qualified under those facts as a casual employee of defendant; the court's analysis was as follows:

> The facts present us with an employe of an independent contractor standing aside from his vehicle for safety purposes, ordered to do a job outside of his ordinary expertise by the agent of the appellant. Appellee sprang to obey. Why? Because the last time he refused to "lend a hand" he had been reprimanded and shifted to over-the-road-work for other customers for a while. On this occasion he considered refusal to be impolitic, and did his best to get "this damn show on the road" as ordered.
> Here at last we see a "casual" employment. The appellee engaged in a "single," "special" job, of "incidental" nature, and his motive was not remuneration. He was a teamster and he operated vehicles for his "valuable consideration." His experience was that he would be lectured and perhaps shifted to work that was physically harder and required travel. He assisted the crane operator for the simple motive of avoiding trouble--a motive as trivial as that of the boy in *Harns, supra*, who undertook to ride the rear of a truck "for the fun of it."
> Casual employment, trivial in nature and not undertaken for valuable consideration does *not* place the kind of "control" in an employer that brings with it the responsibility contemplated by the Workmen's Compensation Act. *It does, however, leave the employer open to liability under traditional tort principles*.

*Id*. at 1060 (emphasis in original).

Plaintiff argues that her case is akin to *Ashman*. Accordingly, for this court to rule that Lowe's owed McDonald a duty when she was injured, I first must find that the plaintiff was

15.

conducting duties of some kind for the defendant that were distinct from plaintiff's duties as an employee of defendant's independent contractor.[8] *See Ashman*, 448 A.2d at 1060 ("The facts present us with an employe of an independent contractor . . . ordered to do a job outside of his ordinary expertise by the agent of the appellant.").

However, the record does not suggest that McDonald was working for Lowe's, as opposed to working for DDP, when she moved the metal shelves. McDonald was supposed to "maintain Plan-O-Gram integrity." Job. Desc. According to McDonald's own testimony, her superior at DDP indicated that she should move the shelves at issue because they conflicted with the Plan-O-Gram. *See* Pl. Dep. at 50:17-22 ("Q. Who told you to do what you were doing? A. I was told by my superior Howard Flatko and I was as Bill Myers stated asked by [Lowe's managers] if I could – I was asked could you do this for me."); *id*. at 66:24 - 68:7 (plaintiff describing how Lowe's disapproved of a Lowe's staffer helping McDonald move metal shelves when "it was my job to do"). The following exchange, in particular, undermines McDonald's argument that, in moving the metal shelf that injured her, she was working for Lowe's, not DDP:

> Q. Did you at any time before your accident call [DDP supervisor] Howard Flatko to tell him that you had to handle these grates?
> A. He knew. Yes, sir, he knew.
> Q. How did you know?
> A. Because when he did the store walk with me he knew that I had to do a reset.
> Q. When did this store walk take place?
> A. Sir, he didn't say literally that Chris [plaintiff], you're going to have to move these shelves. He said this is a mess. It's going to have to be

---

[8] In her argument on this theory, McDonald dwells substantially on the issue of her motive in undertaking the task that led to her injury. *See, e.g.,* Pl.'s Mem. at 5 ("Her motive was not remuneration but fear that she would end up in trouble with her employer."). While I am not convinced that plaintiff's motive is central to this doctrine, I accept McDonald's contention on this point.

>   completely redone. He never told me I was going to have to move steel. To be honest with you I never thought I had to move steel.
> Q.   When did that conversation occur?
> A.   It was three weeks prior.
> Q.   So the bay that was supposed to be set as a four bay that was set as a two bay, Howard Flatko saw it three weeks before your accident and told you you're going to need to do something about it?
> A.   Yes.
> Q.   That was a physical meeting in the store itself?
> A.   Yes.

*Id.* at 68:8 - 69:8. This testimony, even viewed in the light most favorable to McDonald, shows that the resetting of the bay (and, thus, the moving of the shelf that injured the plaintiff) was a job undertaken by her employer DDP, regardless of whether handling steel shelves was strictly part of McDonald's job description.[9] I do not perceive any dispute of material fact on this point. *Cf. Joseph*, 23 A.2d at 472 ("The precise nature of the relationship, under the evidence, presents a question of fact which it is the exclusive function of the jury to determine . . . except where the facts are not in dispute and the evidence is direct and certain, presenting no question of credibility and leaving no sufficient ground for inconsistent inferences of fact."). Accordingly, in these circumstances, the casual employment doctrine does not apply.

## C. Statutory Employer Argument

In the alternative, Lowe's has argued that it is a "statutory employer" of plaintiff under these facts. If Lowe's were a "statutory employer," plaintiff's exclusive remedy would be recovery under the Pennsylvania Workers' Compensation Act. 77 PA. STAT. § 481 ("The

---

[9] These circumstances are distinguishable from *Ashman* where, despite that the plaintiff's employer may have strongly urged plaintiff to aid defendant from time to time, the duty orders in the instance of the injury came from the defendant (not the plaintiff's employer) and there was no question that the job undertaken was outside the scope of plaintiff's regular duties. 448 A.2d at 1056.

liability of an employer under this act shall be exclusive and in place of any and all other liability to such employes . . ."). In light of my conclusions in Part II (B), I need not address whether Lowe's was a "statutory employer," because plaintiff has not shown that Lowe's could be liable even without applying the exclusivity clause of the Worker's Compensation Act.

### D. Plaintiff Giovanni Chiazzese's Claim for Loss of Consortium

The complaint also lodges a claim for loss of consortium on behalf of Christine McDonald's husband, Giovanni P. Chiazzese. Loss of consortium claims are derivative of the underlying action. *Patterson v. Amer. Bosch Corp.*, 914 F.2d 384, 386 n.4 (3d Cir. 1990); *see also Little v. Jarvis*, 280 A.2d 617, 620 (Pa. Super. Ct. 1971) (citing the proposition that one spouse's claim for damages is derivative of the other's right to recover)). Because I have concluded that Lowe's is entitled to summary judgment as to McDonald's claims, I will grant the motion for summary judgment as to Chiazzese's claim, as well.

### III.  CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is granted in the accompanying order.